IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIMOTHY O'KEEFE,

     Plaintiff,                    No. 2:11-cv-2659 KJM KJN P

     vs.

JERRY BROWN, et al.,

     Defendants.              FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff is a state prisoner proceeding without counsel. Plaintiff has a long history of mental illness, severe depression, and chronic suicidal thinking. On February 4, 2013, plaintiff filed a motion which this court construes as a motion for a temporary restraining order preventing prison officials at R.J. Donovan Correctional Facility ("RJD") from transferring plaintiff pending resolution of the instant action. As set forth below, the court finds that plaintiff's motion should be denied without prejudice.

II. Motion for Temporary Restraining Order

        On January 17, 2013, plaintiff appeared before the Inter Disciplinary Treatment Team ("IDTT"), which included his psychologist and other mental health clinicians, and plaintiff's level of mental health care was elevated from Correctional Clinical Case Management

1

System ("CCCMS") to the Enhanced Outpatient Program ("EOP") level of care, despite plaintiff's objections.[1]  Plaintiff claims that because he was assigned EOP status, his Classification Committee put plaintiff up for transfer to plaintiff's first choice, Mule Creek State Prison ("MCSP"), which is in line with plaintiff's custody level, and Corcoran State Prison, which plaintiff objected to because it is a higher security level prison.  Plaintiff also objects to the transfer on the following grounds, which he states serve as the basis for the instant motion:

    1. Plaintiff receives mental stability from visits from numerous friends who will be unable to visit plaintiff if he is transferred.

    2. Plaintiff contends that if he is transferred to MCSP or Corcoran, his level of care will be returned to CCCMS because he does not want to be in the EOP level of care, and then the transfer will have been for nothing.

Plaintiff argues that transferring him to another prison would harm his mental health and state of mind, as stability and continuity of care are critical for his mental health.

To support his request, plaintiff provides the following:

    1. The 2013 Mental Health Placement Chrono, which finds that plaintiff meets inclusion criteria for the EOP level of care, that "inclusion is for medical necessity," and notes plaintiff has a GAF score of 45,[2] and is prescribed psychotropic medication.  (Dkt. No. 75 at 5.)

---

[1] Plaintiff disputes the two reasons the IDTT changed plaintiff's level of care.  First, plaintiff contends that the "self injurious, suicide risk" diagnosis has been his diagnosis since his arrest on December 26, 2000, and has never been used as an excuse to place him in EOP.  Plaintiff denies having said recently that he is "going to actually hang himself, or cut his wrist, or any such thing."  (Dkt. No. 75 at 2.)  Second, the IDTT claimed that plaintiff's requested 1 to 1 meetings with his psychologist every other week, taxed their resources, and if plaintiff needed to be seen this often, he needed to be in EOP.  (Id.)  Plaintiff contends that while at MCSP at the CCCMS level of care, he met with his psychologist every other week.  Plaintiff states that six days after the IDTT, he met with his psychologist and told her "that if [he] needed to be seen less in order to be CCMS, then this was fine with [plaintiff]."  (Id.)

[2] "GAF" is an acronym for "Global Assessment of Functioning," a scale used by clinicians to assess an individual's overall level of functioning, including the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders with Text Revisions 32 (4th ed. 2004).  A GAF of 61-70 indicates some mild symptoms (e.g., depressed mood and mild

2. A copy of an August 15, 2007 CDC Form 128C from W.J. White, Psy. D. at MCSP, who states:

> This inmate/patient has a type of mental disorder characterized by extremes of emotional instability. Given the above, it is clinically contra-indicated for him to be transferred from Mule Creek State Prison.
>
> This inmate patient's Treatment Plan emphasizes the need for a high level of continuity-of-care and minimal disruptions.

(Dkt. No. 75 at 6.)

3. A January 23, 2013 Notice of Classification Hearing, in which plaintiff is notified that he would appear before a Unit/Institutional Classification Committee on January 29, 2013, for review and consideration of program/transfer review. (Dkt. No. 75 at 7.)

4. Health Care appeals and health care services request forms in which plaintiff requests that his level of care be returned to CCCMS. (Dkt. No. 75 at 8-14.)

III. Plaintiff's Third Amended Complaint

Plaintiff alleges he is not receiving adequate and appropriate psychiatric care in a safe and therapeutic environment for his Axis 1 mental health diagnosis of exhibitionism, voyeurism and paraphilia; he is suffering much mental and physical pain and anguish; has chronic suicidal thinking; and feels helpless and hopeless. (Dkt. No. 72 at 1.) In addition, plaintiff was stabbed by another prisoner in September of 2012.

////

---

insomnia) or some difficulty in social, occupational, or school function (e.g, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Id. A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers.) Id. A 41-50 rating indicates serious symptoms such as suicidal ideation, severe obsessional rituals, or serious impairment in social, work, or school functioning. A GAF of 31-40 indicates: "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school.)" Id.

Plaintiff does not seek monetary damages, but seeks an order requiring defendants to provide adequate and appropriate psychiatric treatment in a safe and therapeutic environment that is consistent with plaintiff's Axis 1 mental health diagnosis of Exhibitionism, Voyeurism and Paraphilia, NOS. If such treatment is not available within the CDCR, plaintiff seeks an order directing defendants to transfer plaintiff to Coalinga State Mental Hospital where this psychiatric treatment is available.

Plaintiff provides a brief history of his incarceration since he returned to prison in 2001. He was initially housed at RJD for reception. Plaintiff was then sent to the California State Prison in Lancaster ("LAC"), and placed in the EOP, which plaintiff alleges did not have any psychological treatment as recommended by Dr. Mohandie.[3] Plaintiff received a referral to Atascadero State Hospital ("ASH"), but on July 31, 2002, because plaintiff is serving a life sentence, Chief Psychiatrist Dr. Weaver stated plaintiff would pose an escape risk from ASH, which is less than a level 2 security. (Dkt. No. 72 at 50.) Dr. Weaver stated that plaintiff should be referred to CMF DMH ["Department of Mental Health"] APP ["Acute Psychiatric Program"] if in-patient hospitalization was indicated. (Id.)

Plaintiff was then transferred to the California Mens Colony-East in San Luis Obispo, where he was able to briefly attend a Sexaholics Anonymous program, and was under consideration for treatment in a group for prisoners with sexual disorders. But before he could start the group therapy, plaintiff was transferred to Salinas Valley State Prison ("SVSP"). Plaintiff claims he received no psychological treatment recommended by Dr. Mohandie while at SVSP. In 2005, plaintiff was transferred to Mule Creek State Prison where he remained until

---

[3] On April 25, 2001, licensed psychologist Kris Mohandie, Ph.D., recommended, *inter alia*, that plaintiff receive adequate treatment which addresses plaintiff's affective disorder (depression), as well as his sexual offense related disorders; intensive psychological treatment to address his longstanding, recurrent, severe depression and serious suicidal ideation, including a psychiatric medication evaluation; mandatory involvement in psychological treatment for his voyeurism and exhibitionism; and evaluation for the appropriateness of medications for plaintiff's paraphilias. (Dkt. No. 72 at 25-47.)

December of 2010. Plaintiff claims he requested the treatment recommended by Dr. Mohandie, but was denied such treatment while he was at MCSP.

In December of 2010, plaintiff was transferred to RJD where he was placed in the EOP level of care. Plaintiff requested the type of psychological treatment recommended by Dr. Mohandie from defendants Shuman, Greenwald, McCarthy, and Cirkit, as well as from Dr. Armenta, Dr. Persson, and Dr. Maness. Plaintiff claims he wrote to defendant Higgins, the Chief Psychiatrist of the CDCR, asking for her assistance, but received no response. Plaintiff also claims he wrote to defendant Warden Paramo, and Associate Warden Seibel, requesting their help, but his requests "fell on deaf ears." (Dkt. No. 72 at 10.)

## IV. Legal Standards

The standards governing the issuance of temporary restraining orders are "substantially identical" to those governing the issuance of preliminary injunctions. Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). Therefore, "[a] plaintiff seeking [injunctive relief] must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir.2009) (*quoting* Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, ___, 129 S. Ct. 365, 374 (2008)). A preliminary injunction is appropriate when a plaintiff demonstrates . . . "serious questions going to the merits and a hardship balance [] tips sharply toward the plaintiff, ... assuming the other two elements of the Winter test are also met." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011). A temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 129 S. Ct. at 376.

The Ninth Circuit has reiterated that under either formulation of the principles, if the probability of success on the merits is low, preliminary injunctive relief should be denied:

> Martin explicitly teaches that "[u]nder this last part of the alternative test, even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits."

Johnson v. California State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995) (*quoting* Martin v. International Olympic Comm., 740 F.2d 670, 675 (9th Cir. 1984).

In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

V. Discussion

On January 17, 2013, Dr. Maness, plaintiff's treating psychologist,[4] signed a Mental Health Placement Chrono, in which he found it medically necessary for plaintiff to be at the EOP level of care, which plaintiff alleges triggered a recommendation that he be moved to a different prison.[5] Plaintiff claims that transferring him to another prison would harm his mental health and state of mind, as stability and continuity of care are critical to his mental health. On January 17, 2013, plaintiff sought relief through the administrative appeals process, and subsequently through the health care system, but claims he may be transferred prior to receiving any response. Plaintiff claims he has offered to remain in the CCCMS level of care, and contends that in other prisons he was allowed to return to the CCCMS level of care upon refusal to participate in the EOP level of care.

////

---

[4] In the third amended complaint, plaintiff identifies Dr. Maness as his treating psychologist, and as a contract psychologist who is leaving due to budget cuts. (Dkt. No. 72 at 9.)

[5] Apparently this chrono resulted from the IDTT's recommendation. It is unclear from the record whether the IDTT was aware that changing plaintiff's level of care from CCCMS to EOP would result in a recommendation that plaintiff be transferred to a different prison.

6

However, in the instant motion, plaintiff fails to address three of the four factors required under Winter, 129 S. Ct. at 374. Plaintiff failed to address the likelihood of success on the merits, the balance of hardships, or the public interest in issuing preliminary injunctive relief. Thus, even crediting plaintiff's argument that transferring him to another prison would harm his mental health, as stability and continuity of care are critical to his mental health,[6] on a sliding scale analysis, such a finding does not eliminate the plaintiff's burden to show some likelihood of success on the merits or at least raise a serious question as to his success. See Alliance, 632 F.3d at 1134-35 (finding the sliding scale test requires a slightly weaker showing of success on the merits to be outweighed by strong equitable considerations). Here, plaintiff has not addressed the issue of likelihood of success of the merits. Moreover, this case is still at the pleading stage. Plaintiff only recently filed his third amended complaint, which the court has not yet screened. Thus, there is no evidence from which the court can determine the likelihood that plaintiff will prevail on the merits of his Eighth Amendment claims. Accordingly, plaintiff's motion should be denied without prejudice to renewal.

In addition, the court has concerns as to the likelihood of irreparable harm. First, to the extent that plaintiff is requesting placement in a specific prison, plaintiff does not have a constitutional right to be housed in a particular institution. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983) ("[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State. . . .").

Second, the record reflects that plaintiff has been housed at other prisons. Plaintiff was housed at MCSP for five years. Despite Dr. White's August 15, 2007 recommendation that it was contra-indicated for plaintiff to be transferred from MCSP, plaintiff was transferred to RJD in 2010. On October 5, 2011, plaintiff was at DMH-SVSP in Soledad, and stated that he was about to be transferred to RJD, which he alleged had no adequate

---

[6] This assumption does not mean that the undersigned concludes that plaintiff has made any such adequate showing, i.e. supported by current medical opinions.

psychiatric treatment for plaintiff. (Dkt. No. 1 at 3.) In the instant action, plaintiff also contends he is not receiving adequate mental health treatment at RJD, but seeks to remain housed at RJD.

Third, plaintiff does not expressly assert that the proposed transfer would inflict irreparable injury. Having to move to a different prison is disruptive, and may cause plaintiff additional mental health issues. However, plaintiff admits that his treating psychologist is leaving due to budget cuts, so plaintiff will be assigned a new psychologist whether he stays at RJD or is transferred to a different prison. Plaintiff denies that he is suicidal, despite his long term diagnosis of suicidal thinking, which plaintiff claims is different from being suicidal.[7] Plaintiff does not have to claim he is suicidal to prevail on the irreparable injury factor, but he must demonstrate he is at imminent risk of irreparable injury.

## VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that plaintiff's February 4, 2013 motion (dkt. no. 75), construed as a motion for temporary restraining order, be denied without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The

////
////
////
////

---

[7] Plaintiff offers no competent medical in support of his self-diagnosis.

8

1  parties are advised that failure to file objections within the specified time may waive the right to
2  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3  DATED:  February 7, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

okee2659.pi