1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TIMOTHY O'KEEFE,                        No.  2:  11-cv-2659 KJM KJN P

12              Plaintiff,

13        v.                                 ORDER AND FINDINGS AND
                                             RECOMMENDATIONS
14   JERRY BROWN, et al.,

15              Defendants.

16

17   I.  Introduction

18          Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19   to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment.

20   (ECF No. 257.)  For the reasons stated herein, the undersigned recommends that defendants'

21   motion be granted in part and denied in part.

22   II.  Legal Standard for Summary Judgment

23          Summary judgment is appropriate when it is demonstrated that the standard set forth in

24   Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

25   movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

26   judgment as a matter of law."  Fed. R. Civ. P. 56(a).

27          Under summary judgment practice, the moving party always bears the initial

28   responsibility of informing the district court of the basis for its motion, and identifying those

1

1  portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

2  together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue

3  of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed.

4  R. Civ. P. 56(c)).

5       "Where the nonmoving party bears the burden of proof at trial, the moving party need

6  only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

7  Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

8  387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

9  committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

10  burden of production may rely on a showing that a party who does have the trial burden cannot

11  produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

12  should be entered, after adequate time for discovery and upon motion, against a party who fails to

13  make a showing sufficient to establish the existence of an element essential to that party's case,

14  and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

15  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

16  necessarily renders all other facts immaterial."  Id. at 323.

17       Consequently, if the moving party meets its initial responsibility, the burden then shifts to

18  the opposing party to establish that a genuine issue as to any material fact actually exists.  See

19  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

20  establish the existence of such a factual dispute, the opposing party may not rely upon the

21  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

22  form of affidavits, and/or admissible discovery material in support of its contention that such a

23  dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

24  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

25  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

26  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

27  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

28  a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

1    (9th Cir. 1987), <u>overruled in part on other grounds</u>, <u>Hollinger v. Titan Capital Corp.</u>, 914 F.2d

2    1564, 1575 (9th Cir. 1990).

3         In the endeavor to establish the existence of a factual dispute, the opposing party need not

4    establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

5    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

6    trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

7    the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

8    <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

9    amendments).

10        In resolving a summary judgment motion, the court examines the pleadings, depositions,

11   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

12   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  <u>See</u> <u>Anderson</u>, 477 U.S. at

13   255.  All reasonable inferences that may be drawn from the facts placed before the court must be

14   drawn in favor of the opposing party.  <u>See</u> <u>Matsushita</u>, 475 U.S. at 587.  Nevertheless, inferences

15   are not drawn out of the air, and it is the opposing party's obligation to produce a factual

16   predicate from which the inference may be drawn.  <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 602 F.

17   Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

18   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

19   some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

20   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

21   trial.'"  <u>Matsushita</u>, 475 U.S. at 586 (citation omitted).

22        By contemporaneous notice provided on September 13, 2010 (ECF No. 28), plaintiff was

23   advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

24   Rules of Civil Procedure.  <u>See</u> <u>Rand v. Rowland</u>, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*);

25   <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).

26   ////

27   ////

28   ////

1   III.  Plaintiff's Claims

2          This action is proceeding on the fifth amended complaint filed November 14, 2014.  (ECF

3   No. 171.)  Plaintiff alleges that defendants failed to provide him with adequate mental health care

4   for paraphilia, exhibitionism and voyeurism, in violation of the Eighth Amendment.[1]  (Id. at 4.)

5   Plaintiff alleges that he has not been treated for these conditions at any California Department of

6   Corrections and Rehabilitation ("CDCR") institution in which he has ever been incarcerated.  (Id.

7   at 9-13.)  In other words, the gravamen of this action is plaintiff's claim that CDCR fails to

8   provide treatment for these conditions.  Plaintiff requests injunctive relief in the form of an order

9   directing defendants to provide him with treatment for these conditions in a safe and therapeutic

10  environment.  (Id. at 12, 14.)   Plaintiff also seeks money damages.  (Id. at 15.)

11         The defendants in this action are Howlin, Belavich, Sirkin, Wynn, Silva and Spearman.

12  At the time plaintiff filed the fifth amended complaint, defendant Belavich was the Deputy

13  Director of the CDCR Statewide Mental Health Program.  The other defendants are employed at

14  the Correctional Training Facility ("CTF"), where plaintiff was incarcerated when he filed the

15  fifth amended complaint.  Plaintiff is still incarcerated at CTF.

16  IV.  Legal Standard for Eighth Amendment Claims

17         To succeed on an Eighth Amendment claim predicated on the denial of medical care, or

18  mental health care, a plaintiff must establish that he had a serious medical need and that the

19  defendant's response to that need was deliberately indifferent.  Jett v. Penner, 439 F.3d 1091,

20  1096 (9th Cir. 2006); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A serious medical

21  need exists if the failure to treat the condition could result in further significant injury or the

22  unnecessary and wanton infliction of pain. Jett, 439 F.3d at 1096.  Deliberate indifference may be

23  shown by the denial, delay or intentional interference with medical treatment or by the way in

24  which medical care is provided.  Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).

25  To act with deliberate indifference, a prison official must both be aware of facts from which the

26

27  _____

[1]  The fifth amended complaint also raised a claim alleging a due process violation based on
defendants failure to transfer him to the R. J. Donovan Correctional Facility.  This claim was
28  dismissed.  (ECF No. 191.)

1   inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

2   inference.  <u>Farmer v. Brennan,</u> 511 U.S. 825, 837 (1994).  Thus, a defendant is liable if he knows

3   that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take

4   reasonable measures to abate it."  <u>Id.</u> at 847.  "[I]t is enough that the official acted or failed to act

5   despite his knowledge of a substantial risk of serious harm."  <u>Id.</u> at 842.

6          A physician need not fail to treat an inmate altogether in order to violate that inmate's

7   Eighth Amendment rights.  <u>Ortiz v. City of Imperial,</u> 884 F.2d 1312, 1314 (9th Cir. 1989).  A

8   failure to competently treat a serious medical condition, even if some treatment is prescribed, may

9   constitute deliberate indifference in a particular case.  <u>Id.</u>

10         It is well established that mere differences of opinion concerning the appropriate treatment

11   cannot be the basis of an Eighth Amendment violation.  <u>Jackson v. McIntosh,</u> 90 F.3d 330, 332

12   (9th Cir. 1996); <u>Franklin v. Oregon,</u> 662 F.2d 1337, 1344 (9th Cir. 1981).

13   V.  <u>Discussion</u>

14         A.  <u>Serious Medical Need</u>

15         Plaintiff argues that he suffers from paraphilia, exhibitionism and voyeurism.  Defendants

16   first argue that paraphilia is not included within the diagnostic categories of serious mental

17   illnesses that would allow transfer of an inmate to the Department of State Hospitals ("DSH"),

18   and DSH would neither accept nor treat plaintiff for paraphilia.  (See ECF No. 190-1 at 31.)

19         The undersigned understands paraphilia to be an "umbrella" term that includes people

20   with abnormal sexual behaviors, such as exhibitionism and voyeurism.  <u>See</u> <u>Yancy v. Voss,</u> 2011

21   WL 1532323 at *2 (C.D. Cal. 2011) (containing DSM definition of paraphilia).  In other words,

22   plaintiff's alleged paraphilia includes exhibitionism and voyeurism, the two alleged conditions on

23   which plaintiff's Eighth Amendment claim is based.  Plaintiff does not seriously dispute that

24   paraphilia is not a separate condition requiring separate treatment.  For these reasons, the

25   undersigned does not separately consider plaintiff's alleged paraphilia in the analysis of plaintiff's

26   Eighth Amendment claims.

27         Defendants next argue that plaintiff has latent exhibitionism and latent voyeurism, which

28   do not qualify as serious medical needs.  In support of this claim, defendants cite the declaration

5

of R. Schwartz, a psychologist at CTF.  (ECF No. 257-10.)  Dr. Schwartz served as plaintiff's

clinician at CTF from June 2, 2015, until September 18, 2015.  (Id. at 1.)  In relevant part, Dr.

Schwartz states,

> 3.  I am aware of a limited number of CDCR programs designed to address and treat indecent exposure (IEX) behavior in inmates. IEX behavior in prison poses a significant risk to the inmate exhibiting that behavior, as it may lead to violent reprisals against the inmate by other inmates.  Due to this risk, CDCR's IEX treatment programs are designed for inmates who exhibit IEX behavior while incarcerated.
>
> 4.  To my knowledge, plaintiff has never exposed himself while incarcerated.  While plaintiff's criminal history exhibits tendencies toward voyeurism and exhibitionism, specifically involving young women, plaintiff has not acted on these tendencies while incarcerated.  It is my opinion that plaintiff's proclivities do not affect his day-to-day life in prison, as there is no ability for plaintiff to act on these specific proclivities in a prison setting.
>
> 5.  To my knowledge, there is no specific treatment available within CDCR for latent paraphilia, including voyeurism and exhibitionism where the inmate-patient does not express symptoms.  To provide such treatment, CDCR psychologists would require specific additional training on how to identify and treat these disorders.
>
> 6.  I am aware that the Department of State Hospitals (DSH) has two units that deal with specialized sexual behavior treatment:  the Mentally Disordered Offender (MDO) Unit and the Sexually Violent Predator (SVP) Unit.  These specialized treatment programs are run by DSH as a condition of parole after an inmate's time has been served within CDCR.  MDO and SVP eligibility is determined by separate evaluation by independent evaluators or by court order.

(Id. at 1-2.)

Citing Dr. Schwartz's declaration, defendants argue that because plaintiff's exhibitionism

and voyeurism are in remission, he does not require treatment for these conditions.  Defendants

argue that if plaintiff exhibited tendencies toward indecent exposure, he could be placed in a

specific treatment program.  Accordingly, defendants argue, plaintiff cannot show the existence

of a serious medical need that has not been addressed.

In his opposition, plaintiff admits that he has not "outwardly exhibited symptoms of

exhibitionism and voyeurism while incarcerated."  (ECF No. 269 at 5.)  However, he argues that

these conditions qualify as serious medical needs because they require treatment despite being in

remission.  In support of this argument, plaintiff has attached two psychological reports to his

1   opposition.

2       The first report, prepared by Dr. Mohandie, is dated April 25, 2001.  (Id. at 36.)  This

3   report was apparently prepared for plaintiff's counsel during criminal proceedings.  (Id.)  This

4   report describes plaintiff's history of voyeurism and exhibitionism.  (Id. at 45-46.)  All of the

5   incidents of voyureism and exhibitionism occurred while plaintiff was not incarcerated.  (Id.)

6   Dr. Mohandie diagnosed plaintiff with several mental disorders, including voyeurism and

7   exhibitionism.  (Id. at 55.)  Dr. Mohandie recommended that plaintiff receive psychological

8   treatment for voyeurism and exhibitionism.  (Id. at 57.)  This treatment included cognitive

9   behavioral therapy, covert sensitization, aversive conditioning, positive conditioning, and relapse

10  prevention activities.  (Id.)

11      The second psychological report, prepared by Clinical Psychologist Stamatia Daraglou for

12  CDCR, is dated July 24, 2013.  (Id. at 60.)  Dr. Daraglou's description of plaintiff's history of

13  voyeurism and exhibitionism is consistent with the description in Dr. Mohandie's report, in that

14  both descriptions describe these activities occurring while plaintiff was not incarcerated.  (Id. at

15  62.)  Dr. Daraglou also states that plaintiff was "last sent to the department of state hospital" to

16  increase social and coping skills, decrease suicide ideation and for diagnostic clarification.  (Id. at

17  63-64.)  Dr. Daraglou states that plaintiff was discharged from the state hospital on November 10,

18  2011, with several diagnoses, including voyeurism and exhibitionism in remission.  (Id. at 64.)

19      Dr. Daraglou also states that during her examination of plaintiff, he denied exposing

20  himself in prison, but stated that he was certain he would expose himself to someone in his victim

21  pool.  (Id. at 64-65.)  Dr. Daraglou opines,

22          His sexual acting out of voyeurism and exhibitionism may be
    another example of his feelings of inadequacy and dates back to his
23          early teenage years.  His victim pool remains the same and his
    fantasies also remain the same.  Even though he was court ordered
24          to treatment at some point, he did not experience a change and it is
    uncertain why the treatment was not successful (whether it was
25          ineffective treatment, or not long enough, or he was not an active
    participant in the treatment, etc.).  Of note is that there is no
26          evidence in his records that he received treatment recommended for
    sexual impulses and paraphilias such as relapse prevention or
27          masturbation/orgasmic reconditioning.  He reports guilt about his
    behavior and anxiety before and after offenses.  He makes
28          statements suggestive that such behavior is ego dystonic.  However,

1                                          left to his own devices, he does not have the ability to develop ways

2                                          of coping with his anxiety, depression, and sexual impulses and to
create change.

3  (Id. at 66.)

4        Dr. Daraglou also states that, "[w]hile in the community, he released his anxiety by

5  peeping and masturbating and it is likely that he does not have other avenues of coping while

6  incarcerated."  (Id. at 67.)  Dr. Daraglou recommends that, "[h]is sexual impulses should be

7  addressed in his treatment plan and specific interventions should be used."  (Id.)

8        After reviewing Dr. Schwartz's declaration and the reports by Dr. Mohandie and Dr.

9  Daraglou, the undersigned finds that whether plaintiff's latent exhibitionism and latent voyeurism

10  constitute serious medical needs are disputed material facts.  "Examples of serious medical needs

11  include '[t]he existence of an injury that a reasonable doctor or patient would find important and

12  worthy of comment or treatment, the presence of a medical condition that significantly affects an

13  individual's daily activities; or the existence of chronic and substantial pain.'"  Lopez v. Smith ,

14  203 F.3d  1122, 1131-32 (9th Cir. 2000), citing McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th

15  Cir. 1992).

16        Dr. Schwartz, Dr. Mohandie and Dr. Daraglou do not dispute that plaintiff's voyeurism

17  and exhibitionism are latent, i.e., plaintiff does not engage in these activities while incarcerated.

18  Defendants argue that these latent conditions do not constitute serious medical needs because,

19  according to Dr. Schwartz, they do not affect plaintiff's day-to-day life in prison.  In contrast,

20  both Dr. Mohandie and Dr. Daraglou found these latent conditions to be worthy of comment.  In

21  addition, both Dr. Mohandie and Dr. Daraglou found that plaintiff should receive treatment for

22  these specific conditions.  In other words, Dr. Mohandie and Dr. Daraglou did not find that these

23  conditions did not require treatment because they were in remission.  The findings by Dr.

24  Mohandie and Dr. Daraglou suggest that these latent conditions may constitute serious medical

25  health needs.  Based on this conflicting evidence, the undersigned finds that whether plaintiff's

26  latent voyeurism and latent exhibitionism constitute serious medical needs are materially disputed

27  facts.

28  ////

B.  Deliberate Indifference

Turning to the subjective prong of an Eighth Amendment claim for inadequate mental health treatment, defendants argue that they did not act with deliberate indifference because they did not deny plaintiff mental health treatment.  Defendants argue that while he was housed at CTF, plaintiff was seen by mental health professionals approximately twice weekly.  (See ECF No. 257-4 at 9.)  Defendants argue that plaintiff's argument that he should have received treatment for latent exhibitionism and latent voyeurism, in addition to the other mental health issues that were treated, is nothing more than a difference of opinion regarding treatment.

Defendants' treatment of plaintiff's other mental health conditions does not mean that they did not act with deliberate indifference by failing to treat plaintiff's latent voyeurism and latent exhibitionism, assuming these conditions constituted serious medical needs.  Defendants offer no evidence that their treatment of plaintiff's other mental health issues adequately addressed his latent voyeurism and latent exhibitionism.

Plaintiff alleges that he had a serious medical/mental health need, which defendants *failed* to treat.  Based on the facts alleged, plaintiff is alleging more than a difference of opinion regarding treatment.  Because of the disputed material facts regarding these claims, defendants' motion for summary judgment on the grounds that they did not act with deliberate indifference should be denied.

C.  Personal Liability

Defendants argue that they are not personally liable for any of plaintiff's alleged injuries.

1.  Claims for Damages

*Legal Standard*

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

9

1   <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658 (1978) ("Congress did not intend § 1983

2   liability to attach where . . . causation [is] absent."); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976) (no

3   affirmative link between the incidents of police misconduct and the adoption of any plan or policy

4   demonstrating their authorization or approval of such misconduct). "A person 'subjects' another

5   to the deprivation of a constitutional right, within the meaning of § 1983, if he does an

6   affirmative act, participates in another's affirmative acts or omits to perform an act which he is

7   legally required to do that causes the deprivation of which complaint is made." <u>Johnson v. Duffy</u>,

8   588 F.2d 740, 743 (9th Cir. 1978).

9        Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

10   their employees under a theory of respondeat superior and, therefore, when a named defendant

11   holds a supervisorial position, the causal link between him and the claimed constitutional

12   violation must be specifically alleged. <u>See</u> <u>Fayle v. Stapley</u>, 607 F.2d 858, 862 (9th Cir. 1979)

13   (no liability where there is no allegation of personal participation); <u>Mosher v. Saalfeld</u>, 589 F.2d

14   438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), <u>cert.</u>

15   <u>denied</u>, 442 U.S. 941 (1979). Vague and conclusory allegations concerning the involvement of

16   official personnel in civil rights violations are not sufficient. <u>See</u> <u>Ivey v. Board of Regents</u>, 673

17   F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal

18   participation is insufficient).

19        *Defendant Belavich--Damages*

20        Defendants argue that other than being listed as a defendant, plaintiff's complaint does

21   not mention defendant Belavich. Defendants also state that defendant Belavich, who was the

22   Deputy Director of the CDCR Statewide Mental Health Program when plaintiff filed this action,

23   is no longer employed with CDCR. (ECF No. 257-5.) Defendant Belavich served as the Deputy

24   Director from March 2012 to January 8, 2016. (<u>Id.</u>) In his declaration, defendant Belavich states

25   that he has never met with plaintiff or treated plaintiff for any medical conditions. (<u>Id.</u>)

26        In his unverified opposition, plaintiff argues that defendant Belavich, as the Deputy

27   Director of the CDCR Statewide Mental Health Program, was responsible for what mental health

28   programs were offered at CDCR. (ECF No. 269 at 3.) In the reply to the opposition, defendants

1   argue that these allegations are not in plaintiff's complaint, and it is improper for him to assert

2   them in his opposition.

3   　　　The undersigned has reviewed plaintiff's complaint and agrees with defendants that it

4   does not mention defendant Belavich other than listing him as a defendant.  In addition, plaintiff's

5   opposition contains no evidence supporting his claim that defendant Belavich was responsible for

6   the policy or practice pursuant to which latent voyeurism and latent exhibitionism are not treated.

7   　　　Plaintiff may not amend his complaint to state his allegations against defendant Belavich

8   by way of his opposition to defendants' summary judgment motion.  See Wasco Products, Inc. v.

9   Southwall Techs. Inc., 435 F.3d 989, 992 (9th Cir. 2006) ("The necessary factual averments are

10  required with respect to each material element of the underlying theory …[S]ummary judgment is

11  not a procedural second chance to flesh out inadequate pleadings."); Gutowitz v. Transamerica

12  Life Ins. Co., 2015 WL 5047702 at *17 n. 78 (C.D. Cal. 2015) (holding plaintiffs could not create

13  triable issue of fact on summary judgment by raising an unpled theory in support of their claims

14  for the first time in their opposition to a motion for summary judgment).  Accordingly, the

15  undersigned recommends that defendant Belavich be granted summary judgment as to plaintiff's

16  claim for damages because the complaint contains no allegations against defendant Belavich.

17  　　　In recommending summary judgment for defendant Belavich, the undersigned

18  acknowledges that in certain cases, it is appropriate to infer authority based on a person's

19  employment title.  See Robles v. Agreserves, Inc., 2016 WL 323775 at * 38 n.5 (E.D. Cal. Jan.

20  27, 2016) ("Given Cervantes' actions, title, and the common understanding of what a foreman

21  does, there is sufficient evidence to infer that Cervantes had authority to direct Robles's

22  actions."), citing Narayan v. EGL, Incl, 616 F.3d 895, 899 (9th Cir. 2010) (all justifiable

23  inferences are made in the non-movant's favor)  However, the undersigned finds that, given the

24  lack of allegations against defendant Belavich in the fifth amended complaint, it is not reasonable

25  to infer that defendant Belavich had authority over the at-issue policy simply based on his title.

26  ////

27  ////

28  ////

*Defendant Howlin--Damages*

Defendants argue that defendant Howlin, the Chief Psychologist at CTF, has never treated plaintiff for any medical condition. (ECF No. 257-6.) In his declaration, defendant Howlin states that, to the best of his recollection, the only interaction he had with plaintiff occurred on January 30, 2015. (Id.) On that day, he interviewed plaintiff for a second level response to a medical inmate appeal plaintiff filed regarding his treatment for exhibitionism and voyeurism. (Id.)

In his opposition, plaintiff admits that defendant Howlin did not ever treat him. (ECF No. 269 at 3.) Plaintiff argues that defendant Howlin is liable for plaintiff's failure to receive treatment for exhibitionism and voyeurism based on Howlin's response to the grievance discussed by defendant Howlin in his declaration. Plaintiff also cites an interdisciplinary progress note signed by defendant Howlin on January 30, 2015, attached to plaintiff's opposition. In this note, defendant Howlin wrote that plaintiff wanted a more specific program addressing exhibitionism and voyeurism. (Id. at 20.)

The undersigned observes that defendant Howlin's response to plaintiff's grievance and his interdisciplinary notes were made after plaintiff filed the fifth amended complaint on November 14, 2014. Therefore, these allegations should have been raised in a supplemental pleading. See Fed. R. Civ. P. 15(d) (on motion and reasonable notice, the court may permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented). Plaintiff may not supplement his complaint by way of his opposition to defendants' summary judgment motion. Accordingly, these allegations, occurring after the filing of the fifth amended complaint, will not be considered.

However, in the verified fifth amended complaint, plaintiff alleges that he submitted CDCR 22 forms to defendant Howlin asking for treatment for exhibitionism and voyeurism. (ECF No. 171 at 11.) See McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (verified complaint may be considered in opposition to summary judgment). Defendants' summary judgment motion does not address this claim.

Because defendants have not addressed plaintiff's claim that he asked defendant Howlin for treatment in CDCR 22 forms, the undersigned finds that defendants have not demonstrated

12

1   that defendant Howlin did not fail to address plaintiff's requests for treatment.  Accordingly,

2   defendant Howlin's motion for summary judgment on the grounds that he did not address

3   plaintiff's requests for treatment for latent voyeurism and latent exhibitionism should be denied.

4          *Defendant Sirkin--Damages*

5          Defendants argue that defendant Sirkin, a senior psychiatrist at CTF, provided plaintiff

6   with medical treatment only once on December 11, 2014. (ECF No. 257-4.)  At that time,

7   defendant Sirkin saw plaintiff because plaintiff wished to have all of his psychiatric medication

8   discontinued.  (Id.)

9          In his opposition, plaintiff argues that defendant Sirkin sat on plaintiff's Interdisciplinary

10  Treatment Team ("ITT") on two occasions.  In support of this claim, plaintiff has provided a

11  mental health placement chrono dated May 21, 2015, containing defendant Sirkin's signature.

12  (ECF No. 269 at 22.)  Plaintiff has provided a second mental health placement chrono, dated

13  August 13, 2015, containing defendant Sirkin's signature.  (Id. at 23.)

14         Neither of the chronos described above mentions plaintiff's request for treatment for latent

15  exhibitionism or latent voyeurism.   However, in his verified declaration submitted in support of

16  his opposition, plaintiff states that defendant Sirkin "knows what my issues are with regards to

17  my exhibitionism and voyeurism because this was discussed at IDTT."  (Id. at 79.)

18         In the reply, defendants observe that the ITT meetings plaintiff describes in his opposition

19  occurred after he filed his fifth amended complaint on November 14, 2014.  Because these events

20  occurred after plaintiff filed his fifth amended complaint, they should have been raised in a

21  supplemental pleading. Fed. R. Civ. P. 15(d).  Plaintiff may not supplement his complaint by

22  way of his opposition to defendants' summary judgment motion.  Accordingly, these allegations

23  occurring after the filing of the fifth amended complaint will not be considered.

24         However, in the verified fifth amended complaint, plaintiff alleges that he submitted

25  CDCR 22 forms to defendant Sirkin asking for treatment for voyeurism and exhibitionism.  (ECF

26  No. 171 at 11.)  See McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (verified

27  complaint may be considered in opposition to summary judgment).  Defendants have not

28  addressed this claim.

1    Because defendants have not addressed plaintiff's claim that in CDCR 22 forms he asked

2    defendant Sirkin for treatment, the undersigned finds that defendants have not demonstrated that

3    defendant Sirkiin did not fail to address plaintiff's requests for treatment.  Accordingly, defendant

4    Sirkin's motion for summary judgment on the grounds that he did not address plaintiff's request

5    for treatment should be denied.

6         *Defendant Wynn—Damages*

7         Defendants argue that defendant Wynn, a senior psychologist supervisor at CTF, met with

8    plaintiff on 6 occasions.  (ECF No. 257-8.)  On December 16, 2014, defendant Wynn met with

9    plaintiff for a first level appeal interview.  (Id.)  On December 24, 2014, defendant Wynn met

10   with plaintiff to provide further feedback from the appeal interview.  (Id.)  Defendant Wynn met

11   with plaintiff on four other occasions in 2015 in response to grievances filed by plaintiff

12   regarding his mental health care.  (Id.)  In his opposition plaintiff does not appear to dispute that

13   he is basing defendant Wynn's liability on the meetings occurring on the dates described in

14   defendant Wynn's declaration.  (ECF No. 269 at 4.)

15        Based on the exhibits attached to plaintiff's opposition, it appears that the grievances in

16   response to which defendant Wynn met with plaintiff in December 2014 included plaintiff's

17   request for treatment for latent voyeurism and latent exhibitionism.  (ECF No. 269 at 88-90.)

18   However, because these events occurred after plaintiff filed his fifth amended complaint, they

19   should have been raised in a supplemental pleading.  Fed. R. Civ. P. 15(d).  Plaintiff may not

20   supplement his complaint by way of his opposition to defendants' summary judgment motion.

21   Accordingly, these allegations occurring after the filing of the fifth amended complaint will not

22   be considered.

23        The only allegation in the fifth amended complaint against defendant Wynn is that he is

24   "aware of plaintiff's needs and desires for the treatment he is seeking."  (ECF No. 171 at 12.)   In

25   the fifth amended complaint, plaintiff does not specifically allege how defendant Wynn had

26   knowledge of his request for treatment.  For this reason, and because plaintiff appears to base

27   defendant Wynn's liability on events occurring after he filed the fifth amended complaint,

28   defendant Wynn should be granted summary judgment on the grounds that plaintiff has not

1    demonstrated Wynn's involvement in the alleged deprivations.

2              *Defendants Spearman and Silva--Damages*

3         Defendants argue that defendants CTF Warden Spearman and Associate Warden Silva are

4    custody staff who had no input regarding plaintiff's mental health treatment.  In his declaration

5    filed in support of the summary judgment motion, defendant Spearman states that custody staff,

6    such as the Warden, Associate Wardens and Chief Deputy Wardens, have no authority to change

7    mental health treatment for inmates.  (ECF No. 257-9.)  Decisions regarding inmate mental health

8    care are made by the appropriate mental health staff.  (Id.)

9         Because defendants Spearman and Silva, as custody staff, have no authority to change

10   mental health treatment, they were not involved in the decisions to deny plaintiff's request for

11   treatment for latent voyeurism and latent exhibitionism.  Accordingly, defendants Spearman and

12   Silva should be granted summary judgment on this ground.

13             2.  Injunctive Relief

14             *Scope of Request*

15        At the outset, the undersigned clarifies the scope of plaintiff's request for injunctive relief.

16   Plaintiff is a member of the class action in Coleman v. Brown, 2: 09-cv-520 LKK DAD P.

17   Exhibitionism is covered by Coleman.  (ECF No. 69 at 11.)  Plaintiff's individual claim for

18   injunctive relief is not barred by Coleman.  (ECF No. 115 at 5.)  However, a claim by plaintiff for

19   systemic injunctive relief related to how CDCR treats inmates diagnosed with exhibitionism is

20   not permitted, as it is duplicative of Coleman.  (Id.)

21        Voyeurism is not covered by Coleman.  (Id.)  Plaintiff is not permitted to bring a claim for

22   systemic wide change to include voyeurism within the CDCR treatment protocol provided for by

23   Coleman.  (Id.)  Plaintiff is permitted to proceed with his individual claim seeking treatment for

24   this condition.  (Id.)

25        Thus, an order for injunctive relief in this action would be framed to apply to plaintiff

26   only.

27   ////

28   ////

1    *Analysis*

2          All that is required in an action for injunctive relief, such as the instant action, is to name

3    an official who could appropriately respond to a court order on injunctive relief should one ever

4    be issued.  Harrington v. Grayson, 764 F.Supp. 464, 475-77 (E.D. Mich. 1991); Malik v. Tanner,

5    697 F.Supp. 1294, 1304 (S.D.N.Y. 1988) ("Furthermore, a claim for injunctive relief, as opposed

6    to monetary relief, may be made on a theory of respondeat superior in a § 1983 action."); Fox

7    Valley Reproductive Health Care v. Arft, 454 F.Supp. 784, 786 (E.D.Wis. 1978).  See also

8    Hoptowit v. Spellman, 753 F.2d 779 (9th Cir. 1985) (permitting an injunctive relief suit to

9    continue against an official's successors despite objection that the successors had not personally

10   engaged in the same practice that had led to the suit.)

11         However, because a suit against an official in his or her official capacity is a suit against

12   the state, a practice, policy or procedure of the state must be at issue in a claim for official

13   capacity injunctive relief.  Haber v. Melo, 502 U.S. 21, 25 (1991).  In this case, plaintiff alleges

14   that CDCR has a practice or policy of not providing treatment for latent voyeurism and latent

15   exhibitionism.  In his declaration, Dr. Schwartz states that to his knowledge, there is no specific

16   treatment in CDCR for these conditions.  (ECF No. 257-10 at 2.)  Thus, the parties do not appear

17   to dispute plaintiff's claim that he is challenging a CDCR policy or practice.  Under these

18   circumstances, plaintiff need only name as a defendant an official who could appropriately

19   respond to a court order on injunctive relief.

20         It is clear that defendants Spearman and Silva, as custody staff, could not respond to a

21   court order directing that plaintiff be provided treatment for latent exhibitionism and voyeurism.

22   Accordingly, defendants Spearman and Silva should be granted summary judgment as to

23   plaintiff's request for injunctive relief.

24         As mental health staff at CTF, defendants Sirkin and Howlin are capable of responding to

25   a court order to provide plaintiff with treatment for latent exhibitionism and voyeurism.

26   Accordingly, defendants' motion for summary judgment as to defendants Sirkin and Howlin

27   regarding plaintiff's claim for injunctive relief should be denied.

28   ////

The Deputy Director of the CDCR Statewide Mental Health Program is also capable of responding to a court order for injunctive relief.  Because defendant Belavich is no longer employed in this position, his successor is automatically substituted as a defendant in his place.  See Fed. R. Civ. P. 50(d).  Accordingly, defendants' motion for summary judgment as to defendant Deputy Director of the CDCR Statewide Mental Health Program regarding plaintiff's claim for injunctive relief should be denied.

D.   Qualified Immunity

Defendants also move for summary judgment on the grounds that they are entitled to qualified immunity.  "Qualified immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or injunctive relief."  Presbyterian Church (U.S.A.) v. United States, 870 F.2d 518, 527 (9th Cir. 1989); see also Vance v. Barrett, 345 F.3d 1083, 1091 n. 10 (9th Cir. 2003) ("a defense of qualified immunity is not available for prospective injunctive relief").  Accordingly, defendants are not entitled to qualified immunity with respect to plaintiff's request for injunctive relief.

Because the undersigned has above found that defendants Belavich, Wynn, Spearman and Silva should be granted summary judgment as to plaintiff's claim for damages, there is no need to address the issue of qualified immunity with respect to those defendants.

*Legal Standard*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Resolving the defense of qualified immunity involves a two-step process; the court must determine (1) whether the plaintiff has alleged or shown a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct.  Pearson, 555 U.S. at 232 (citing Saucier v. Katz, 533 U.S. 194, 201-02 (2001)).  These steps may be analyzed in any order.  Id. at 236.

////

17

1    "Qualified immunity is applicable unless the official's conduct violated a clearly

2    established constitutional right." Pearson, 555 U.S. at 232.  To be clearly established "[t]he

3    contours of the right must be sufficiently clear that a reasonable official would understand that

4    what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

5    "[E]xisting precedent must have placed the statutory or constitutional question beyond debate."

6    Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011); see also Clement v. Gomez, 298 F.3d 898, 906

7    (9th Cir. 2002) ("The proper inquiry focuses on...whether the state of the law [at the relevant

8    time] gave 'fair warning' to the officials that their conduct was unconstitutional.") (quoting

9    Saucier, 533 U.S. at 202).

10    "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the

11    party seeking summary judgment," and must, as in other cases, view the evidence in the light

12    most favorable to the nonmovant.  See Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014).

13    *Analysis*

14    Considering the first prong of the qualified immunity test, for the reasons discussed above,

15    the undersigned finds that defendants Sirkin and Howlin potentially violated plaintiff's Eighth

16    Amendment right to adequate mental health treatment by failing to provide him with treatment

17    for latent voyeurism and latent exhibitionism.

18    The undersigned next considers whether a reasonable mental health official would have

19    known that failing to provide plaintiff with treatment for latent voyeurism and latent

20    exhibitionism violated plaintiff's Eighth Amendment rights.  Defendants argue that plaintiff

21    received mental health treatment on a regular basis while housed at CTF and never exhibited

22    symptoms of exhibitionism and voyeurism while incarcerated.  Defendants argue that a

23    reasonable medical professional in the positions of defendants would not have known that

24    providing plaintiff with medical treatment beyond what was asked for and outside of the

25    protocols of CDCR was constitutionally required.

26    The undersigned agrees with defendants that defendants Sirkin and Howlin would not

27    have known that failing to provide plaintiff with treatment for latent exhibitionism and latent

28    voyeurism violated plaintiff's Eighth Amendment rights because treatment for these conditions

1 would have gone beyond what was asked for and outside of CDCR protocols. A reasonable

2 prison mental health official, in defendants' position, would have reasonably relied on CDCR

3 policy and practice, and would not have known that failing to provide plaintiff with treatment for

4 latent voyeurism and latent exhibitionism violated the Eighth Amendment.[2] Accordingly,

5 defendants Sirkin and Howlin should be granted summary judgment based on qualified immunity.

6       Accordingly, IT IS HEREBY ORDERED that the Deputy Director of the CDCR

7 Statewide Mental Health Program who replaced defendant Belavich is substituted in his place as

8 a defendant pursuant to Federal Rule of Civil Procedure 25; and

9       IT IS HEREBY RECOMMENDED that defendants' summary judgment motion (ECF

10 No. 257) be granted but for plaintiff's claim for injunctive relief against defendants Sirkin,

11 Howlin and the Deputy Director of the CDCR Statewide Mental Health Program.

12       These findings and recommendations are submitted to the United States District Judge

13 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

14 after being served with these findings and recommendations, any party may file written

15 objections with the court and serve a copy on all parties. Such a document should be captioned

16 "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

17 objections shall be filed and served within fourteen days after service of the objections. The

18 parties are advised that failure to file objections within the specified time may waive the right to

19 appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

20 Dated: July 25, 2016

21

22 KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

23

24 Ok2659.sj

25

26

27   [2]  Defendants do not specifically argue that they are entitled to qualified immunity because <u>Coleman</u> did not require them to provide treatment for latent exhibitionism or latent voyeurism.

28 Accordingly, the undersigned does not consider this issue.

19