UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY O'KEEFE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JERRY BROWN, et al.,<br><br>　　　　　Defendants. | No. 2:11-cv-2659 KJM KJN P<br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' supplemental motion for summary judgment. (ECF No. 291.) For the reasons stated herein, the undersigned recommends that defendants' motion be granted in part and denied in part.

II. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears
> the initial responsibility of informing the district court of the basis
> for its motion, and identifying those portions of "the pleadings,

> depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

(9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on September 30, 2010 (ECF No. 27), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

////

////

////

III. Plaintiff's Claims

This action proceeds on the fifth amended complaint filed November 14, 2014, as to defendants Sirkin, Howlin, Wynn and Deputy Director of the California Department of Corrections and Rehabilitation ("CDCR") Statewide Mental Health Program. (ECF No. 171.) Plaintiff alleges that defendants failed to provide him with adequate mental health care for exhibitionism and voyeurism. (Id. at 4.) Plaintiff alleges that he has not been treated for these conditions at any CDCR institution in which he has ever been incarcerated. (Id. at 9-13.) In other words, the gravamen of this action is plaintiff's claim that CDCR fails to provide treatment for these conditions. Plaintiff requests injunctive relief in the form of an order directing defendants to provide him with treatment for these conditions in a safe and therapeutic environment. (Id. at 12, 14.)

IV. Background

In the first summary judgment motion, defendants argued that plaintiff's exhibitionism and voyeurism were not serious medical needs, as defined by the Eighth Amendment. (ECF No. 257.) Defendants also argued that they did not act with deliberate indifference because they did not deny plaintiff mental health treatment. (Id.) Defendants also moved for summary judgment as to plaintiff's claim for damages on grounds that they were not personally liable for any of plaintiff's alleged injuries. (Id.) Finally, defendants also moved for summary judgment as to plaintiff's claim for injunctive relief. (Id.)

The undersigned recommended that defendants' motion for summary judgment be granted as to plaintiff's claim for damages, and be denied as to plaintiff's claim for injunctive relief against defendants Sirkin, Howlin and Deputy Director of the CDCR Statewide Mental Health Program. (ECF No. 272.) On September 29, 2017, the Honorable Kimberly J. Mueller adopted the findings and recommendations. (ECF No. 282). Judge Mueller also denied the summary judgment motion as to plaintiff's claim for injunctive relief against defendant Wynn. (Id.) Judge Mueller referred this matter back to the undersigned for further proceedings which could include: a settlement conference; a further motion with specified briefing for summary judgment; or an evidentiary hearing on the merits of plaintiff's claim for prospective injunctive relief. (Id.)

On October 24, 2017, the undersigned ordered defendants to file a supplemental summary judgment motion. (ECF No. 284.) The undersigned noted that in her order, Judge Mueller found that the parties had not fully briefed the standards applicable to plaintiff's claim for injunctive relief against defendants in their official capacities. (Id.) Judge Mueller referred this matter back to the undersigned for further briefing on that issue. (Id.)

In the October 24, 2017 order, the undersigned directed defendants to file a supplemental summary judgment motion addressing the following issues: 1) are there any defendants capable of responding to an order granting plaintiff's request for injunctive relief; and 2) do plaintiff's claims for injunctive relief attack a state policy or procedure. (Id.)

On December 27, 2017, defendants filed a supplemental summary judgment motion addressing both issues identified in the October 24, 2017 order. (ECF No. 291). On January 31, 2018, plaintiff filed an opposition. (ECF No. 294.) On February 6, 2018, defendants filed a reply. (ECF No. 295.)

V. Discussion

A. Legal Standard for Plaintiff's Claim for Injunctive Relief

Plaintiff's claim for injunctive relief is against defendants in their official capacities. See Aholelei v. Dept. of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). A plaintiff pursuing claims against defendants in their official capacities must demonstrate that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985). That is, the plaintiff must establish an affirmative causal link between the policy at issue and the alleged constitutional violation. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 391–92 (1989); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996).

Furthermore, "[a] plaintiff seeking injunctive relief against the state is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1127 (9th Cir. 2013) (citing Hafer, 502 U.S. at 25.) "Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can

appropriately respond to injunctive relief." Id. (citing Los Angeles County v. Humphries, 562 U.S. 29, 35–36 (2010)).

B. Do Plaintiff's Claims for Injunctive Relief Attack a State Policy or Custom?

*Clarification of Plaintiff's Mental Health Conditions*

In the pending motion, defendants argue that CDCR does not have a policy or custom of not treating *latent* voyeurism and *latent* exhibitionism. The supplemental summary judgment motion does not contain evidence supporting the characterization of plaintiff's conditions as latent. However, in the first summary judgment motion, defendants described plaintiff's conditions as latent. (See ECF No. 272 at 5-6 (findings and recommendations addressing first summary judgment motion.) In support of the first summary judgment motion, defendants provided the declaration of Dr. Schwartz, who served as plaintiff's clinician at the Correctional Training Facility ("CTF") from June 2, 2015, to September 18, 2015. (ECF No. 257-10 at 1.) Dr. Schwartz characterized plaintiff's conditions as latent because plaintiff had not acted on his tendencies toward voyeurism or exhibitionism since his incarceration. (Id. at 1-2.) In his opposition to the first summary judgment motion, plaintiff admitted that he had not "outwardly exhibited symptoms of exhibitionism and voyeurism while incarcerated." (ECF No. 269 at 5.)

Because the parties have previously agreed that plaintiff's conditions are latent, the undersigned presumes, for purposes of these findings and recommendations, that plaintiff suffers from latent voyeurism and latent exhibitionism.

*Analysis*

In support of their claim that CDCR does not have a policy or custom to not treat latent voyeurism or latent exhibitionism, defendants cite the declaration of defendant K. Tebrock, Deputy Director of the Statewide Mental Health Program for CDCR. (ECF No. 291-5.) Defendant Tebrock states, in relevant part,

> I am aware that plaintiff has claimed in this lawsuit that CDCR has an official policy or practice of not providing mental health care to inmates with latent exhibitionism or voyeurism. CDCR has no such policy or practice. While clinicians primarily focus on providing treatment to inmates with active symptoms of severe mental illness, there is no policy that prevents clinicians from providing care to those with latent issues. In fact, there are a

6

> number of inmates participating in the mental health system who have no current active symptoms but continue to receive treatment to avoid decompensation.

(Id. at 3.)

In contrast to the portion of defendant Tebrock's declaration quoted above, in the first summary judgment motion, defendants stated that the "specific treatment that plaintiff is seeking for his alleged diagnoses is not offered at any CDCR institution." (ECF No. 257-1 at 6: 17-18.) In his declaration filed in support of the first summary judgment motion, Dr. Schwartz also stated that there was no specific treatment available within CDCR for latent paraphilia:

> To my knowledge, there is no specific treatment available within CDCR for latent paraphilia, including voyeurism and exhibitionism where the inmate-patient does not express symptoms. To provide such treatment, CDCR psychologists would require specific training on how to identify and treat these disorders.

(Id. at 2.)

Dr. Schwartz's statement that there is no specific treatment available within CDCR for latent voyeurism and latent exhibitionism, and that CDCR psychologists would require specific training in order to treat these disorders, appears to contradict defendant Tebrock's statement that there is no policy not to treat these conditions.[1] Dr. Schwartz's declaration also seems to contradict defendant Tebrock's suggestion that CDCR is able to provide specific treatment for latent exhibitionism and latent voyeurism.

If CDCR employs no psychologists trained to treat latent exhibitionism and latent voyeurism, as stated by Dr. Schwartz, then the undersigned cannot find that CDCR does not have a policy or custom not to treat these conditions. Due to the conflicting evidence presented by defendants regarding the availability of treatment for these conditions, the undersigned finds that defendants have not met their initial burden of showing that CDCR does not have a policy or custom to not treat latent exhibitionism or latent voyeurism.

---

[1] In his declaration filed in support of the first summary judgment motion, Dr. Schwartz stated that he was aware of a limited number of CDCR programs designed to address and treat indecent exposure behavior in inmates. (ECF No. 257-10 at 2.) Based on this statement, it appears that CDCR offers treatment for inmates who actively engage in exhibitionism, i.e., their condition is not latent.

7

In the pending summary judgment motion, defendants also argue that it is evident from plaintiff's recent treatment history that his grievance is not with any CDCR policy, but rather with the form his individual treatment has taken. Defendants state that according to Dr. Schwartz, plaintiff's frustrations stem from a belief that not receiving "specific" treatment for his behaviors that resulted in his incarceration will harm his ability to be considered for release on parole." (ECF No. 291-4 at 2.) In his declaration filed in support of the pending motion, Dr. Schwartz also suggests that plaintiff's failure to receive treatment is caused by plaintiff's own failure to cooperate:

> 4. During my sessions with Mr. O'Keefe, he has mentioned his sexual fantasies occasionally, although it is not something he brings up during every session. When Mr. O'Keefe brings up these sexual fantasies, I attempt to address within him the underlying psychological issues driving these fantasies. Given the infrequency with which I meet with Mr. O'Keefe, however, it is difficult to maintain his focus on these underlying psychological issues.
>
> 5. I am aware that Mr. O'Keefe has previously been elevated to the EOP level of care on a number of occasions. Each time this has occurred, however, he has refused to cooperate with his clinicians, resulting in his return to the CCCMS level of care.

(Id. at 2.)

Defendants' arguments challenging the sincerity of plaintiff's desire for treatment for his conditions go beyond the scope of the issues defendants were ordered to address in this supplemental summary judgment motion. In any event, plaintiff's concern that his failure to receive treatment for his conditions may impact his parole eligibility does not demonstrate that his desire for treatment is not sincere.

Finally, even were the undersigned to consider the sincerity of plaintiff's request for treatment, Dr. Schwartz's declaration does not adequately describe plaintiff's past and present treatment. Dr. Schwartz does not describe the frequency of his meetings with plaintiff, compared to the treatment plaintiff would receive in the EOP level of care. Dr. Schwartz's statement that plaintiff refused to cooperate with his clinicians each time he was elevated to the EOP level of care is also not well supported. Moreover, according to Dr. Schwartz, no CDCR psychologists are trained to treat plaintiff's latent conditions even if plaintiff were in the EOP level of care.

Accordingly, for the reasons discussed above, defendants' motion for summary judgment on the grounds that CDCR does not have a policy or custom to not treat latent exhibitionism and latent voyeurism should be denied.

B. <u>Are Defendants Wynn and CDCR Mental Health Director Tebrock Capable of Responding to an Order Granting Plaintiff's Motion for Injunctive Relief?</u>

Defendants do not argue that defendants Sirkin and Howlin could not respond to an order for injunctive relief.

*Defendant Wynn*

Defendants argue that defendant Wynn is not capable of responding to an order for injunctive relief. In his declaration, defendant Wynn states that he is a Senior Psychologist Specialist at CTF, where plaintiff is currently housed. (ECF No. 291-6 at 1.) Defendant Wynn's duties include managing the Alternative Housing Area at CTF, which generally involves facilitating the transfer of critical patients to Mental Health Crisis Bed units. (Id.)

Defendant Wynn states that as of March 2017, he no longer has supervisory duties at CTF, and nor does he manage the mental health clinic on the yard where plaintiff is housed. (Id. at 2.) Defendant Wynn states, "[t]hus, for the past eight months, I have had no input into any clinical issues involving inmate/patient O'Keefe." (Id.) Defendant Wynn states that he does not anticipate resuming those responsibilities at any point in the forseeable future. (Id.) Defendant Wynn states that while plaintiff could be referred to the Department of State Hospitals, such a referral would need to be made by his current provider based on clinical indication. (Id.) Defendant Wynn states that referrals are typically made from the Mental Health Crisis Bed units, or the EOP level of care, and plaintiff is currently not at that level. (Id.)

In his opposition, plaintiff concedes that defendant Wynn could not respond to an order for injunctive relief. (ECF No. 294 at 7.) Plaintiff argues that the Supervising Psychologist who took Dr. Wynn's place, i.e., Dr. Sease, could respond to an order for injunctive relief. (Id.) Plaintiff alleges that Dr. Sease recently appeared at the interdisciplinary team, where the issues of plaintiff's need for treatment for voyeurism and exhibitionism were raised. (Id.) Plaintiff requests that Dr. Sease be substituted as a defendant. (Id.)

Federal Rule of Civil Procedure 25(d) provides that an action does not abate when a public officer who is a party in an official capacity,

> dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.

Fed. R. Civ. P. 25(d).

As a Senior Psychologist, defendant Wynn does not hold public office. For that reason, Rule 25 is not applicable.

Because defendant Wynn is not capable of responding to an order for injunctive relief, defendants' motion for summary judgment as to defendant Wynn should be granted.

*Deputy Director of CDCR Statewide Mental Health*

Defendant Tebrock is currently the Deputy Director of CDCR Statewide Mental Health. In his declaration, defendant Tebrock addresses his ability to respond to an order for injunctive relief:

> 3. I am aware that Plaintiff Timothy O'Keefe has filed a lawsuit claiming that CDCR staff have failed to provide him with treatment for diagnoses of exhibitionism and voyeurism. If the Court were to issue an order that I provide plaintiff with treatment for these conditions, I could not take any unilateral action.
>
> 4. To effect a transfer of plaintiff to any other institution, the CDCR Division of Adult Institutions (DAI) would have to determine whether such a transfer was appropriate based on custodial factors, such as enemy concerns or housing restrictions. I do not have any authority to overrule DAI if it is determined that transferring plaintiff to a particular institution is inappropriate based on these custodial factors.
>
> 5. In response to an order from this Court, I could direct plaintiff's clinicians at his current institution to evaluate plaintiff for his claimed paraphilia. I could not, however, direct the clinicians to provide a specific treatment, as that is a decision that can only be made by a treating clinician in coordination with the inmate/patient. Furthermore, the Chief of Mental Health and the Supervising Psychiatrist at plaintiff's current institution have independent authority to affect plaintiff's course of treatment without requiring my approval or direction.
>
> 6. Furthermore, the transfer of an inmate to the Department of State Hospitals (DSH) can only be effectuated based on specific criteria authorized in CDCR's Memorandum of Understanding with DSH, and I do not have authority to override those criteria. It is my understanding that plaintiff does not meet these criteria at this time.

(ECF No. 291-5 at 2.)

As all parties in this action are aware, plaintiff has been transferred several times over the course of this action.[2] If plaintiff is transferred again, defendant Tebrock would be able to order clinicians at plaintiff's new institution to evaluate plaintiff for his claimed paraphilia. Based on the frequency of plaintiff's transfers, and defendant Tebrock's ability to order evaluations at all CDCR institutions, the undersigned finds that defendant Tebrock should not be granted summary judgment on grounds that he could not respond to an order for injunctive relief.

In addition, as discussed above, Dr. Schwartz stated in his declaration filed in support of the original summary judgment motion that no CDCR psychologists are trained to treat latent voyeurism and latent exhibitionism. Dr. Schwartz stated that CDCR psychologists would require specific training to treat these conditions. If that is true, defendant Tebrock does not address his ability to order training for CDCR psychologists to treat these conditions. For this additional reason, defendant Tebrock should not be granted summary judgment on these grounds.

In his declaration quoted above, defendant Tebrock also states that for plaintiff to be transferred to any other institution, the CDCR DAI would first have to determine whether such a transfer was appropriate based on custodial factors. Defendant Tebrock states that he has no authority to overrule DAI if it determines that transferring plaintiff to a particular institution is inappropriate.

Defendant Tebrock is alleging that plaintiff's transfer to a different institution for mental health treatment requires input from both custodial staff and mental health staff. Based on these circumstances, defendant Tebrock would be able to respond, in part, to an order directing him to transfer plaintiff. However, if no CDCR psychologist is currently trained to provide plaintiff with

---

[2] When plaintiff filed this action on October 5, 2011, he was housed at Salinas Valley State Prison ("SVSP"). (ECF No. 1.) In December 2011, plaintiff was transferred to the R.J. Donovan Correctional Facility ("RJDCF"). (ECF No. 10.) In April 2013, plaintiff was transferred to the California Medical Facility ("CMF"). (ECF No. 79.) In May 2013, plaintiff was returned to RJDCF. (ECF No. 81.) In August 2013, plaintiff was transferred to the California Health Care Facility ("CHCF"). (ECF No. 89.) In October 2013, plaintiff was transferred to California State Prison-Corcoran ("Corcoran"). (ECF No. 99.) In September 2014, plaintiff was transferred to CTF. (ECF No. 166.) In October 2015, plaintiff was transferred to SVSP. (ECF No. 237.) In March 2016, plaintiff was transferred to CTF, where he is currently incarcerated. (ECF No. 258.)

treatment, as stated by Dr. Schwartz, then it is not clear that an order granting plaintiff's request for injunctive relief would necessarily include an order that he be transferred to a different institution.

Finally, the undersigned also observes that in his declaration filed in support of the first summary judgment motion, Dr. Schwartz addressed defendant Tebrock's statement that plaintiff does not meet the criteria for a transfer to the DSH. Dr. Schwartz stated that the DSH has two units that deal with specialized sexual behavior treatment: the Mentally Disordered Offender ("MDO") Unit and the Sexually Violent Predator ("SVP") Unit. (ECF No. 257-10 at 2.) Dr. Schwartz stated that these programs are run by DSH as a condition of parole after an inmate's time has been served. (Id.)

Because plaintiff is still serving his sentence, he does not qualify for placement in the MDO Unit or SVP Unit of the DSH. However, plaintiff's current failure to qualify for placement in these units does not disqualify his claim for injunctive relief raised in the instant action.

Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that defendants' summary judgment motion (ECF No. 291) be granted as to defendant Wynn; defendants summary judgment motion be denied in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 9, 2018

Ok2659.sj(2)

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

12